IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Mark J. Shotwell, | [] |
| | [] |
| Plaintiff, | [] |
| | [] |
| v. | [] |
| | [] Civil Action No. 16-441-RGA |
| Detective Stafford of Middletown Police Dept, | [] |
| Middletown Police Department, | [] |
| | [] |
| | [] |
| Defendant. | [] |

Dated: April 23, 2018

*pro se* Plaintiff,
Mark J. Shotwell
11 W. Main St.
Newark, DE  19702

## PLAINTIFF'S MOTION TO COURT REGARDING DEFENDANT'S LATEST MOTION, DATED APRIL 17, 2018

On April 17, 2018, the Defense filed an *"Opposition Of Defendant Det. Stafford To Plaintiff's Motion For Extension Of Time For Discovery And To Provide Access To Funds For Forensic Expert Deposition Testimony"* with the Court. Immediately after reading the filing, I couldn't help but notice the overwhelming amount of intentional-deceit that the Defense is attempting to introduce to the Court. I find this extremely disturbing considering the Defense clearly has access to the three Extraction Reports that I have repeatedly referred to in this case which had been performed by the Middletown Police Dept after my arrest in 2015. In fact, the Town of Middletown's Attorney, Scott Chambers, has even recently provided me with another copy of these Extraction Reports in

1

response to my Discovery request and has been working very closely with the Defense in this case. It would seem quite unrealistic that this information hasn't been shared between these parties being that they have both acknowledged that they share a common interest in this case, being Detective Stafford.

As the Plaintiff, I feel that it's imperative that the Court be provided factual information about the untruthful and misleading claims the Defense is making in this April 17, 2018 filing and ask the Court to compel the Defense to operate in a more ethical and considerate manner out of respect for the Court and all parties involved in this case. I have addressed several of these concerns below and have also attached supporting evidence with this Motion that will provide the Court undeniable proof that the Defense is clearly being misleading to the Court.

1. The Defense suggested *"Plaintiff's deposition testimony on March 27, 2018, as well as deposition testimony elicited by Plaintiff on April 4, 2018, from four witnesses, make it clear that his claim(s) has no arguable merit in fact or law..."*

   I would argue that indeed I was able to obtain quite valuable information from my April 4, 2018 depositions and the Defense is simply growing more concerned about it. The Defense can "suggest" whatever they like in an attempt to make it seem like I have unfounded claims and can't possible present a reasonable legal argument in Court. However, the reality is much different. I would say that they've been more concerned with trying to diminish my character by misconstruing the facts of the case than they have been with doing their own homework about the claims I have present to the Court, all of which I still strongly stand behind.

2. The Defense mentioned, *"Plaintiff chose to depose 4 of the 5, and release the 5th witness at the end of the day, after deciding not to depose her"* and *"Plaintiff changed his mind and told her he no longer wanted to depose her"*, suggesting that I did this just to be malicious and waste her time or as a means of being disrespectful to the witness.

What the Defense didn't tell the Court was that my reason for not deposing this witness was just the opposite. Because the Defendant (Detective Stafford) was refusing to answer simple questions with appropriate short answers, I was forced to repeat questions multiple times and encourage him to provide only direct answers to my specific questions. The Defendant's counsel only further contributed to the amount of time this process took and ultimately the scheduled deposition times were behind. However, the **primary reason** I chose not to depose this witness was because just prior to her, her husband was deposed and was clearly agitated and refused to cooperate with either side. He made direct threats to me about involving his family in this case and was extremely agitated because he felt his legal compliance with the Subpoena was "harassing" to him and his family. Again, the Defendant's counsel only further prodded the witness by agreeing that I was trying to "harass" them and that I was the bad guy in this situation. After losing his temper he proceeded to berate me for filing this legal case against the Defendant (Det. Stafford) who was "like a son to him". So yes, after his testimony, I didn't think it would be appropriate to put his wife through similar questioning and cause her any emotional turmoil now that I knew the Defendant was related to the family. Until that point, I had absolutely no idea of any connection between the family and Det. Stafford and could appreciate the protective demeanor they seemingly had for the Defendant. However, I would still argue that in no

way does it legally justify perjury and providing false testimony like was given during the depositions on April 4, 2018. (Which it outlined later in this Motion)

It certainly makes much more sense to me now though and would explain why highly private communications such as pictures and videos messages between me and the Defendant's "cousin" were deleted from my devices and not present in the Extraction Reports the Defendant admittedly performed. This also provides a logical explanation for the many anonymous text messages defaming my character that were sent to her phone and her sudden erratic behavior that I had mentioned in previous filings.

3. The Defense is alleging that I have *"abused the subpoena and discovery process by serving subpoenas on non-parties holding no information relevant to his claims, has harassed witnesses by serving them with subpoenas and making them submit to depositions and whose testimony is clearly in stark contrast and denial of the assertions Plaintiff states..."* and further claiming that I am *"harassing state agencies and members of the public with his subpoenas"* because they seemingly feel that *"many of the subpoenas were blatantly for information not relevant to Plaintiff's claims"*. The Defense is also suggesting to the Court that my Subpoena of DTI's (Delaware Department of Technology and Information) Elayne Starkey, and a Subpoena sent to DSHS (Delaware Safety and Homeland Security) have *"no nexus on this litigation and any testimony or records sought by Plaintiff have no bearing on this case."*

I strongly oppose the Defense's position on this. The fact is I have had direct conversations with Elayne Starkey since my arrest by Middletown Police Dept. in 2015 about Cellebrite

UFED, both on the telephone and also at a State of Delaware public meeting. The Defense would like to suggest that the testimony of the Defendant himself should satisfy the Court regarding complex networking and computer based security measures such as firewalls and access to data that is most certainly enabled immediately after the contents of a cellular phone are extracted with the use of Cellebrite UFED technology when the data is then stored, shared, and copied throughout the legal process and then also again when stored on a server or cataloged in a database. The intent of the Subpoena was NOT to use Elayne Starkey as an expert witness, but was quite clear in requesting specific information possessed and accessible by DTI. The reality is the Defendant is nowhere near qualified enough in any of this area, and is simply offering answers that only stand to benefit him as the Defendant in this case. I think it's appropriate to remind the Defense that the Defendant couldn't even answer the most basic of questions pertaining to Cellebrite UFED when being deposed. And more concerning is that his "training" that the Defense is gloating as some special achievement, really only consists of the completion of less than 40 class hours from a mass seminar offered by the manufacturer of the product he used to perform the extractions on my phones. It's important to point out that the Defendant's "certification" from a Cellebrite UFED seminar is in no way relevant to the legality of his actions. And the same would be said for someone who paid to take a NASCAR driving course and learned how to drive a NASCAR car. It was be ridiculous to argue that that person could then go buy a NASCAR car and drive it however they'd like on public roadways, simply because the received a paper "certification" from some weekend NASCAR course.

I would also argue the same for the Subpoena that was directed to DSHS (Delaware Safety and Homeland Security). The Defense is attempting to suggest that I'm phishing for some

information that doesn't exist. I assure the Court that I have also had numerous communications with various DSHS employees regarding Cellebrite UFED after my arrest by Middletown Police Dept in 2015 and although DSHS may not want to provide me with the information that I have requested and will likely do everything in their legal power to argue that the information being sought is not relevant to this case, I contest that it is most certainly relevant and that's precisely why I took the appropriate legal actions I have to obtain the information through legal Subpoena rather than rely on "good-faith" for production of this information.

4. The Defense is seemingly attempting to disillusion the Court with the notion that since other law enforcement agencies possess and use Cellebrite UFED technology that it was appropriate for this case by stating *"the forensic equipment used is accepted by the Courts and has been used in Delaware for years by law enforcement and by law enforcement agencies across the United States, as well as around the globe"*.

I would caution the Court that although this technology may be possessed by other law enforcement agencies, neither the Defendant nor his counsel could possibly testify with any degree of certainty to the specifics of their claim. The reality is all law enforcement agencies face a wide array of situations every day. In the event that an officer was investigating a terrorist subject that was found with large amounts of explosives after making threats to detonate bombs at crowded public locations, I'm sure the Court would agree that an in-depth examination of this person's entire digital universe would be appropriate. However, I think the Court would also agree that in the vast majority of other

situations that the full extraction of an individual's entire digital universe is completely unreasonable and unnecessary.

The Defendant was fully aware of the amount and nature of data that would be extracted by the use of Cellebrite UFED technology. He also chose to take no precautionary steps to protect my rights to personal privacy before using the most invasive tool at his disposal to perform these overly-invasive extractions on 3 of my cellular phones just to see if I had contacted 1 person on 1 day. This information could have easily been accessible through my cellular carrier as is done in many other cases which would have certainly protected the privacy of myself and the many others whose information was contained within my phone(s). The Defendant could have also easily and quickly checked to see if the phones were even activated or "in-service" at the time when the alleged call was made prior to performing these most invasive extractions, but he chose not to. If he had, he would have learned that one of the phones (the 3,711 pg report) wasn't even activated or "in service" during the target date of his search. The Defendant has also testified that Middletown Police Dept did also possess other less-invasive tools and technologies used for cellular forensics at the time of his "examination". However, the Defendant testified that since he was not trained with the less-invasive software, he instead used Cellebrite UFED knowing it would extract massive amounts of highly personal information well beyond the 1 day of call log history being authorized by the search warrant.

I don't bring this to the Court's attention lightheartedly. The fact is this case stands to set a very serious and necessary precedent regarding unreasonable and overly-invasive phone searches. The U.S. Constitution's 4th Amendment is specifically intended to prevent

unreasonable searches and seizures and protect citizen's right to personal privacy from such unreasonable searches. This was not a case of 'life or death' or national security by any means. The extractions are even dated as being performed months after my date of arrest which clearly corroborates that I was viewed as no imminent danger to anyone, including the ex-girlfriend that made the complaint. The Defendant had more than ample time to perform a "reasonable" search which was being authorized by the search warrant to *"obtain phone call history from October 13, 2015"*.

5. The Defense is attempting to manipulate the Court's previous ruling on a Memorandum Opinion, dated August 3, 2017, where my allegations were misrepresented as *"allegations that Stafford conducted an overly invasive retrieval for cell phone information from August 14, 2015 until October 15, 2015"*.

Unsure of where that narrow 2 month time period came from, I immediately made notice to the Court that in fact my allegations were, and have always been, that the Defendant conducted an overly invasive retrieval of cell phone information that included several years' worth of information, activity, and data. This allegation has been supported throughout my filings and has even been represented in the screen shot images that I've introduced with various filings. The Defense was been fully aware of my claims from the very beginning, yet unfortunately it appears that they are attempting to capitalize on a potential typo or misunderstanding made by the Court in this ruling.

6. The Defense is suggesting a clear misrepresentation about cellular forensics to the Court. They seemingly acknowledge that their case would NOT benefit from me introducing expert

testimony by stating *"this case is not a battle of the experts"* and *"no experts are needed…"* Yet the Defense is still suggesting that the Defendant was "properly trained" yet the Defendant also testified that *"to recover any such data, a full extraction is necessary"*. The Defense is claiming the Defendant's actions were to that of *"a landlord who is presented with a valid search warrant"* and that the Defendant simply *"unlocks the door and lets the police in to conduct the search"*. The Defense then attempts to mislead the Court by trying minimize the Defendant's involvement by stating, *"Stafford unlocked the phones for the investigating detective to do the authorized search"*.

It's important to point out to the Court that not only did the Defendant unlock the phones, which were protected by a lock-screen passcode, the Defendant also went on to knowingly extract all of the contents of the phone(s), which included data that was NOT contained immediately within the phones but was data which was ultimately attainable from the phone(s) because the phone(s) stored passcodes to the various electronic accounts (such as email, social media, and related personal accounts).

I further argue that expert testimony is indeed necessary in this case so that the Court can obtain an unbiased understanding about the technological aspects about the searches that were performed on my cell phones and why 4,376pgs of highly personal data was extracted from them, all of which was completely unreasonable and totally unnecessary.

7. The Defense is attempting to introduce untruthful and biased testimony from the witnesses deposed at my April 4, 2018 depositions in an effort to discredit my claims in this case. And although I personally feel that the Defense is going to be largely responsible for misleading

the witnesses about this case and having no concern for anyone involved other than the Defendant, I am placed in the position to defend my claims and contest the testimony of these witnesses. Regardless of the understandable vested interest these witnesses have with the Defendant who is considered as a family member to them, the act of perjury should not be tolerated by any Court.

The Defense stated *"Ms. Baker testified the she and Plaintiff had broken up months before October of 2015 (when Shotwell was arrested for a PFA violation) and were not even in contact in the fall of 2015 or 2016 (the 3 phone extractions took place in early February, 2016)."* And *"nor was she romantically involved at all with the Plaintiff after the Summer of 2015, or even in contact with him."* This is absolutely false testimony, and I have attached proof from various Cellebrite extraction reports that show Ms. Baker and myself had continuous contact and romantic relations through November of 2015. The Defense would like to disillusion the Court with the dates of the extraction reports, when really it's the date of the arrest that is ultimately relevant. As I've stated in my previous filings that it wasn't until after my date of arrest that the anonymous text messages began being sent to Ms. Baker (whom I was dating at the time). This is also the same time in which Ms. Baker's highly erratic behavior began as mentioned in previous filings and can also be further corroborated through further text messages and audio recorded telephone conversations.

Claims that the witnesses had no knowledge of anything and that they are just victims of my attempted "harassment" is not only untrue, but also offensive to me personally, considering that I've done everything I could throughout this process to protect the personal privacy of everyone whose information is ultimately within these 4,376pgs of extraction reports. It

seems that the Defense is hell-bent on making me out to seem like kind of monster and sadly had shown no regard for anyone other than the Defendant. But I remind the Court that it was the Defendant that performed these overly-invasive extractions and if I'm viewed as the "bad guy" for having to use it in my own defense and prove untruthful testimony is being used against me, then so be it. I just want to be on record again stating that this is exactly what I wanted to avoid, as I've mentioned in previous filings.

8. The attachments I've included with this Motion, respectively labeled 1A, 1B, 2A, 2B, 2C, 3A, 3B, 3C, 4A, 4B, 4C, and 5A are being introduced as a timeline of phone activity to contradict the statement of testimony being offered to the Court in the Defense's Motion.

I have long established claims that selective data such as xxx-rated pictures, videos, and various other communications were deleted from my phones after they were seized by the Middletown Police Dept., mainly involving the female I was dating at the time of my arrest in 2015. The Defense has since acknowledge that this same female gave supportive testimony that indeed I would have had that kind of 'data' in my phones by stating, *"she did acknowledge that plaintiff likely has private photos of her and they exchanged texts of a personal nature..."* But the million dollar question still remains: Whatever happened to all these pictures, videos, etc?? Not only are they not in the extraction reports performed by the Defendant, but they are also no longer present in the any of the phones and were not found when the phones were reexamined again with an even-newer version of Cellebrite UFED months after getting the phones back from Middletown Police Dept.

This becomes especially concerning when you analyze the attachments, in particular 2C which shows the total extraction 'Analytics' for each Contact in the phone for the cellular phone that was in use at the time of my arrest. Oddly, all communications had been deleted or "scrubbed" from the reports between me and the Defendant's "cousin", Ms. Baker. When you consider the frequency and dates from attachment 1B (an older phone that was also seized at the time of my arrest in 2015), then that of 2C (the active phone that was in use at my time of arrest) which shows no activity between the Defendant's "cousin", Ms. Baker and myself, but then 3B and 3C (a Cellebrite UFED extraction report that was performed on the phone that I purchased immediately after my arrest 2015 arrest) which clearly shows that we were still very much romantically involved into November of 2015.

And also, I presented exhibits at the April 4th, 2018 depositions, attachment 5A of this Motion, which shows I was even helping Ms. Baker revise her resume in which we emailed to her mother to print out (time stamped October 2015).

The U.S. Supreme Court is currently ruling on a 4th Amendment case involving cellular phones, *Carpenter v. United States*. What's particularly interesting and also quite relevant to this case is that Justice Gorsuch raised the argument that individuals have a **'property right'** to their data contained within their phones. Now beyond the personal privacy concerns I have with the search that was conducted by the Defendant, I also have a major concern the 'data' in which I had a legal property right to which was also deleted from my phone(s). Of course the Defense will likely argue this 'property right' because of the personal nature of the data, but I would then urge the Court to consider the legal standard

of property rights. I would also remind the Court that I have not, nor have I ever shown any interest or intent, of publicizing or sharing this now deleted 'data', but still feel that I had legal property rights to it and it should not have deleted or "scrubbed" from the phone(s).

9. The Defense is alluding to the Court that the Defendant is protected by Qualified Immunity in this case. I strongly disagree and would argue that it's quite apparent that I have already legal established and exceeded the Elements and Liability Standards of this 1983 claim. There is more than adequate case law that supports my argument and I compel the Court to take this last ditch "Hail-Mary" defense approach off of the table for the Defendant and his legal counsel.

10. And lastly, the Defense is misrepresenting information to the Court in regards to me publicizing information from these extraction reports on public websites. In an earlier filing I included the website address in which I set up and a handful of **REDACTED** screen shots were included on. The Court was already made aware of this and no personal information was disclosed in these images. The screen shots only included very generic information such as the amount of pages these extractions were and the ledger that showed what types of information is extracted with this highly-invasive Cellebrite UFED reports. The Defense has taken this same approach every step of the way and has injected false misrepresentations of my actions that are clearly NOT true. The Defense is attempting to diminish my personal character with these allegations and I find it completely unfair. The extraction reports don't lie in regards to this case and I would hope that they reference the information they already have before making more ridiculous assertions in which I then have to include more excerpts of these extractions just to debunk their outlandish claims.

All that's happening is more private information is being publicized and I'm made to look like the bad guy in the process. I've tried to be as clear as possible, that aside for dropping this case, I wish to keep the contents of all extraction reports as confidential as possible for the benefit of all parties.

I am also seeking clarification from the Court regarding the numerous Cellebrite extraction reports for the Defense's Discovery. The reports contain pertinent information regarding my claims in this case and therefore I intend to use them as evidence, but they contain large amounts of personally private information about myself and many others. It appears that the Defense is trying to prevent them from being admitted as evidence and be a part of the Discovery, but I would argue that in addition to the 3 extractions performed by the Defendant, there are also separate extraction reports that have been performed that also contain relevant information in this case. I'm asking the Court how it wishes me to disclose this information to the Defense for their Discovery and also how to file this information with the Court for later purposes. I'm sure all parties would agree that protecting the personal privacy of those whose information is contained within these reports is of the highest importance.

Sincerely,

Mark J. Shotwell