IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK J. SHOTWELL,

    Plaintiff,

v.

DETECTIVE JOSHUA STAFFORD,

    Defendant.

No. 16-cv-441-RGA

## MEMORANDUM ORDER

Presently before the Court is Plaintiff's motion for leave to file a third amended complaint. (D.I. 110). I have considered the parties' briefing. (D.I. 111, 118, 119).

## I.  FACTUAL BACKGROUND

Plaintiff brings numerous claims based on the search of his three cell phones conducted by the Middletown Police Department ("the Police Department") in February 2016.[1]

On October 13, 2015, Officer Michele Wharton was dispatched to a Delaware residence. The reporting person ("Ms. Doe") stated that she was contacted via phone by her ex-boyfriend, Plaintiff, in violation of an active Protection from Abuse order ("PFA"). Officer Wharton confirmed that there was an active PFA stating that Plaintiff was not to have any contact with Ms. Doe by any means. Ms. Doe told Officer Wharton that she received a call from a private number and heard Plaintiff's voice. The voice told her, "We need to talk. I know you're going through my computer." Ms. Doe also stated that approximately two hours earlier, she received a

---

[1] The following are allegations from Plaintiff's prior and proposed amended complaints. They are included to provide context. The facts from the proposed amended complaint (D.I. 111, Ex. A) are assumed true for the purposes of this motion only.

call from Plaintiff's mother. Plaintiff's mother told Ms. Doe that Plaintiff had called her upset and asked that Ms. Doe stop going through Plaintiff's computer. (D.I. 11-1 at 9–10 (10/13/2015 Police Report)).

Later that day, Officer Wharton called Plaintiff on a recorded phone line at the Police Department. Plaintiff told Officer Wharton that he believed Ms. Doe had programmed a code into his computer to spy on him. He denied calling her but stated that he asked his mother to call for him. After Officer Wharton explained that that was also a violation of the PFA, he stated that he had just vented to his mother. Officer Wharton told Plaintiff that she would be obtaining a warrant for his arrest and Plaintiff responded that he would turn himself in. (*Id.* at 10).

Officer Wharton then called Plaintiff's mother from the same recorded phone line. Plaintiff's mother stated that Plaintiff called her very upset because he thought Ms. Doe did something to his computer. She also stated that she then called Ms. Doe to ask about the computer. (*Id.*).

Officer Wharton compiled these events in an affidavit of probable cause and submitted it with a warrant application. A warrant was issued for the search and seizure of "a Cell phone belonging to [Plaintiff] and the forensic examination of the phone there of to obtain phone call history from 10/13/15." (*Id.* at 1–2).

Plaintiff turned himself in to the Police Department on October 16, 2015. Upon arrival, he indicated that he owned multiple cell phones, one or more of which were in his vehicle parked in the Police Department parking lot. Officer Jordan Douglass submitted that information in an affidavit and obtained a warrant for the search and seizure of "cell phone(s) belonging to [Plaintiff]," including a description of his vehicle to be searched. (*Id.* at 5–8). Three cell phones

2

were seized—one from Plaintiff's person and two from his vehicle—and placed in evidence. (*Id.* at 13 (10/16/15 Police Report)).

Officer Wharton applied for and obtained another warrant on February 1, 2016.[2] The warrant was issued for the three cell phones in evidence "belonging to [Plaintiff] and the forensic examination of the phone there of to obtain call history from 10/13/15, used or intended to be used for the harassment of the victim and in violation of a PFA order." (D.I. 111, Ex. A ¶ 51).

From February 2 to February 3, 2016, Detective Joshua Stafford performed a forensic examination on each of Plaintiff's three cell phones. The examination was done with a device and software known as the Cellebrite System. (*Id.* ¶¶ 54, 56, 58). The Cellebrite System cannot set search parameters beyond selecting one of three extraction methods. The narrowest method, "logical" or "base" extraction, captures SMS messages, contacts, call logs, media, and app data. (*Id.* ¶¶ 15–19). Plaintiff alleges that, per the February 1, 2016 warrant, the forensic examination should have been limited to "call history from 10/13/15," meaning the Cellebrite extractions were overbroad. (*Id.* ¶¶ 60–61). Therefore, Plaintiff claims that the Police Department's use of the Cellebrite System, and subsequent actions based on the Cellebrite results, violated his Fourth Amendment rights.

## II.    PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, filed an initial complaint on June 15, 2016 against the State of Delaware. (D.I. 2). Plaintiff sought damages under 42 U.S.C. § 1983, among other relief, for violations of his Fourth Amendment rights. I dismissed the complaint based on the State of Delaware's immunity from suit and gave Plaintiff leave to amend to name the proper defendants. (D.I. 10).

---

[2] The October 15, 2015 warrant expired ten days after it issued. (D.I. 11-1 at 1; D.I. 111, Ex. A ¶¶ 38, 48).

Plaintiff filed a first amended complaint ("FAC") on October 31, 2016. (D.I. 11). The FAC named Defendants Delaware Department of Justice, the Police Department, Officer Douglass, Officer Wharton, and Detective Stafford. I dismissed Defendant Delaware DOJ as immune from suit but allowed Plaintiff to proceed against the remaining Defendants. (D.I. 12).

Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). (D.I. 21). I granted the motion with respect to all claims except the § 1983 claims against Detective Stafford. (D.I. 25 at 5–7). I dismissed the claims against the Police Department because it is an arm of the local municipality, but gave Plaintiff leave to amend to substitute the proper party, the Town of Middletown ("the Town"). (*Id.* at 5). It was unclear whether the FAC also raised supplemental state claims for defamation and intentional infliction of emotional distress. Therefore, I considered the claims not raised, but gave Plaintiff leave to amend to raise those claims if he had intended to do so. (*Id.* at 7).

Plaintiff filed a second amended complaint ("SAC") on August 25, 2017. (D.I. 27). The SAC again names Detective Stafford and the Police Department as defendants. (*Id.* at 1). The SAC also appears to raise supplemental state claims for "defamation and intentional or negligent infliction of emotional distress." (*Id.* at 3). Defendants filed an answer to the SAC on September 7, 2017.

Plaintiff moved to request appointment of counsel on October 30, 2017. (D.I. 31). I denied Plaintiff's motion without prejudice to renew. (D.I. 75 ¶ 5). Plaintiff retained counsel on June 19, 2018. (D.I. 87).

Now, with assistance of counsel, Plaintiff moves for leave to file a third amended complaint ("TAC"). (D.I. 110). The parties have conducted substantial discovery, but no trial

date has been set. (D.I. 30). Except for some discovery deadlines, all dates have been vacated pending the setting of a schedule at a scheduling conference. (D.I. 98 at 1).

## III. ANALYSIS

The proposed TAC makes substantial changes to the SAC. Per my order, the SAC was limited to § 1983 claims against Detective Stafford and the Town (incorrectly named as the Police Department), and supplemental claims for defamation and intentional infliction of emotional distress. (D.I. 25, 27). The proposed TAC adds § 1983 claims against the Mayor and Council of Middletown ("the Mayor and Council"),[3] Police Chief Michael Iglio, and Officer Wharton.[4] Plaintiff also brings supplemental claims for violation of the Delaware Constitution, invasion of privacy, intentional infliction of emotional distress, return of property under state and federal law, and conversion. Plaintiff is no longer bringing a defamation claim. (D.I. 111 at 3–4, Ex. A). As discussed at the November 19, 2018 status conference, I believe Plaintiff's § 1983 claims (Counts I and III) should drive the amendment analysis. The supplemental claims (Counts II, IV–IX)[5] will follow. (11/19/18 Status Conf. at 27:20–29:20).

### A. Rule 15(a)

Federal Rule of Civil Procedure 15 governs amendments to the pleadings generally. Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113,

---

[3] A single entity described as "a body politic and corporate in law charged with responsibility for governing the Town, the [Police] Department, and the use of [Police] Department equipment." (D.I. 111, Ex. A ¶ 3). Under the Town's charter, the Mayor and Council are "able and capable to sue and be sued." (D.I. 111, Ex. B § 3).

[4] I dismissed Plaintiff's claims against Officer Wharton in the FAC. (D.I. 25 at 6–7). Plaintiff now brings new claims based on allegedly different conduct. (D.I. 111 at 3, 14–15).

[5] Counts VIII and IX are numbered incorrectly.

115 (3d Cir. 2000). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017).

### 1. **Prejudice to Defendants**

Plaintiff argues that Defendants will not be prejudiced by the proposed TAC because Defendants possess most of the discoverable materials. Further, documents and witnesses are freely available as the accused conduct occurred relatively recently. Defendants offer no counter arguments. Therefore, I find Defendants will suffer little or no prejudice if Plaintiff is allowed to amend his complaint.

### 2. **Futility—Count I**

Count I asserts § 1983 claims against the Town, the Mayor and Council, and Chief Iglio, none of whom were named in the SAC.[6] Plaintiff alleges that all three parties (1) were aware of the risk of the Cellebrite System "to well-established possessory and privacy rights . . . including . . . rights protected by the Fourth Amendment of the U.S. Constitution, Section 6 of the Delaware Constitution, and title 11, Chapter 23 of the Delaware Code," (2) "purchased, and directed and/or authorized its officers to use the Cellebrite System," (3) "did so without implementing adequate policies and practices to prevent violations of . . . Constitutional rights," and (4) "did so without providing proper and adequate training to police officers . . . ." (D.I. 111, Ex. A ¶¶ 85–88). (D.I. 27).

As a preliminary matter, Plaintiff improperly relies on violations of Delaware law. Section 1983 is limited to remedies for deprivation of rights under the U.S. Constitution or the federal laws. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Count I is based in part on

---

[6] Plaintiff was given leave to substitute the Town for the Police Department in the SAC, but he did not do so. (D.I. 25 at 5; D.I. 27 at 1).

violations of rights under the Delaware Constitution and Delaware Code. (D.I. 111, Ex. A ¶ 87). Therefore, to the extent that Plaintiff seeks to add violations of Delaware law as a basis for his § 1983 claims, the motion to amend is **DENIED**.

In his briefing, Plaintiff also states that the proposed TAC names Chief Iglio in his official and individual capacities. (D.I. 111 at 3). From the plain language of the TAC, it appears that Iglio was not Chief of the Police Department when the allegedly unlawful conduct took place. (D.I. 111, Ex. A ¶ 77; *see also* D.I. 14 (waiver of service submitted by Chief Yeager on behalf on the Police Department, dated December 21, 2016)). Therefore, to the extent that Plaintiff names Iglio in his individual capacity, the motion to amend is **DENIED.**

Assuming, consistent with this order, Plaintiff only brings claims based on alleged violations of his Fourth Amendment rights and against Chief Iglio in his official capacity, I do not think Count I is futile.

### a. Statute of Limitations and Relation Back

Defendants argue that Plaintiff's Count I claims are barred by the statute of limitations pursuant to Delaware Code title 10, section 8119. Section 8119 states, "No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained." Defendants argue that the Cellebrite examinations were performed in February 2016 and Plaintiff filed the present motion to amend in September 2018, over two years later. (D.I. 118 at 6).

Defendants' argument fails because Plaintiff's amended claims in the proposed TAC relate back to the SAC, filed in August 2017 and within two years of the Cellebrite examinations. (D.I. 3). Under Rule 15(c) of the Federal Rules of Civil Procedure, a plaintiff can avoid the

running of a statute of limitations by relating an amendment back to a timely filed complaint. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 189 (3d Cir. 2001). Three conditions must be met for an amended complaint that adds new parties. First, the new claim arose out of the conduct set out, or attempted to be set out, in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). Second, the new party received notice of the action and will not be prejudiced in defending on the merits. Fed. R. Civ. P. 15(c)(1)(C)(i). Third, the new party knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c)(1)(C)(ii). The latter two conditions must be met within the Rule 4(m) period—ninety days from when the timely complaint was filed. Fed. R. Civ. P. 15(c)(1)(C), 4(m); *see also Singletary*, 266 F.3d at 194 (presuming the Rule 4(m) period starts from the filing date of the timely complaint); *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003) (same). Here, the Rule 4(m) period ended on November 23, 2017, ninety days after Plaintiff filed his SAC. (D.I. 27).

All of Plaintiff's claims arose out of the same conduct set out, or attempted to be set out, in the SAC—the search and seizure of his three cellphones. Thus, there is no question that the first condition is met.

As for the second condition, notice is met "when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary*, 266 F.3d at 195. "[T]he notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Id.*

At the latest, the Town had notice by August 4, 2017, when I explicitly gave Plaintiff leave to substitute the Town for the Police Department as the proper party in interest. (D.I. 25 at

5). I do not think the fact that Plaintiff, acting *pro se*, failed to make the substitution in his SAC negates that notice. (D.I. 27). The Town appears to be an active participant in this litigation. (*See* 11/19/18 Status Conf. at 2:15–17, 27:7–11 (the Town having individual representation)). I do not think the Town will be prejudiced in defending on the merits.

Notice may also be imputed where parties share an identity of interest. In other words, "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Singletary*, 266 F.3d at 197. The Mayor and Council is the Town's controlling entity. As such, I believe the two parties share sufficient interests that notice to the Town is imputed to the Mayor and Council. *See Sacko v. Trustees of Univ. of Pennsylvania*, 2014 WL 5297992, at *3 (E.D. Pa. Oct. 15, 2014) (finding an identity of interest between two officers that appeared to be "equal in rank"); *cf. Garvin*, 354 F.3d at 227 (finding police officers as "non-managerial employees" do not have an identity of interest with their employer).

Chief Iglio, in his official capacity, also received notice well before the Rule 4(m) cut-off date. In late 2016, Plaintiff attempted to serve the Police Department. Daniel Yeager, the Police Chief at the time, submitted a waiver of service in response. (D.I. 14). Although I later dismissed the Police Department as a party, I allowed Plaintiff to move forward on his claims against Detective Stafford, an employee of the Police Department, and the Town. As head of the Police Department, Chief Iglio certainly retained "some reason" to expect his potential involvement as a defendant. *See Singletary*, 266 F.3d at 195.

Lastly, all three parties either knew or should have known that the action would have been brought against them but for the mistake of identity. It is clear from Plaintiff's complaints that he intended to assert claims against those that authorized the Police Department to use the

9

Cellebrite System. (*See* D.I. 11, 27). Per my order, the Town knew it was a proper party. The Mayor and Council should have known as well. Not only is it the Town's controlling entity, but Plaintiff attempted to serve the Town's "Chief Executive Officer." While there is no "Chief Executive Officer," the Mayor and Council should have recognized that it would be substituted as the proper party. Likewise, while I dismissed the Police Department as a defendant, Chief Iglio should have recognized that he would be substituted as a proper department representative.

Therefore, I find the amended claims in Count I relate back to Plaintiff's timely filed SAC.

### b. Failure to State a Claim upon Which Relief Can Be Granted

Defendants make two arguments under Federal Rule of Civil Procedure 12(b)(6). First, Defendants argue that Plaintiff's Count I claims fail as a matter of law because the Cellebrite System "has been accepted as 'standard' across the United States and globe." Instead, Defendants assert, "If Plaintiff wanted to file suit against the makers of the Cellebrite equipment itself, he should have done so." (D.I. 118 at 7–8).

Defendants' argument is problematic for several reasons. Defendants make a bare factual assertion that Cellebrite is considered "standard" equipment worldwide. Not only is that unsupported by the record, but it is not part of the proposed TAC. Defendants argue that Plaintiff's amendment should be denied because his claims are futile under Rule 12(b)(6)— essentially, a motion to dismiss. (D.I. 118 at 7). Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record when evaluating whether dismissal under Rule 12(b)(6) [is] proper." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Defendants' factual

assertion is clearly different from other outside evidence that courts have considered like "an undisputedly authentic document" or "legal arguments presented in memorandums or briefs." *See id.*; *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002). Even assuming the Cellebrite System is "standard," Defendants fail to explain why use of "standard" equipment cannot be the basis for a § 1983 claim. Defendants make the argument without any supporting authority. Lastly, Defendants' statement about the Cellebrite manufacturer is not persuasive. Under § 1983, Plaintiff cannot seek remedies against the manufacturer as it is presumably a private company and not acting "under the color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Kaucher v. Cty of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Second, Defendants argue that any claims based on allegations of improper policy and training are futile, because those allegations "fl[y] in the face of the already obtained deposition testimony of Chief Iglio as to the protocols in practice, complete with training documentation on the Cellebrite system of [Detective Stafford]." (D.I. 118 at 8).

Again, Defendants rely on evidence outside the proposed TAC, which would be improper under their quasi-motion to dismiss. I could consider such evidence by converting the motion to dismiss into a motion for summary judgment. *See Pryor*, 288 F.3d at 560. But I think a motion for summary judgment would be premature. Although the parties had begun discovery when Plaintiff moved to file the TAC, most of that discovery was done while Plaintiff was *pro se*. Substantial discovery has been done since then, with the assistance of Plaintiff's counsel, and has yet to be presented to the Court.

Therefore, I find Plaintiff's claims under Count I are not futile.

### 3. Futility—Count III

Count III alleges that Officer Wharton and Detective Stafford acted under the color of state law and violated Plaintiff's clearly established constitutional rights. (*Id.* ¶¶ 98–100).

I dismissed the § 1983 claims against Officer Wharton in Plaintiff's FAC on the basis of qualified immunity. (D.I. 25 at 5–7). I found that, based on the circumstances and facts known to Officer Wharton and included in her affidavit of probable cause, probable cause existed to conduct a forensic examination of Plaintiff's cell phones. Further, even if probable cause did not exist, Officer Wharton is entitled to qualified immunity because a reasonable officer could have believed that there was probable cause and no rational fact finder could conclude otherwise. (*Id.* at 6–7).

Plaintiff argues that his new claims against Officer Wharton are based on different conduct not protected by qualified immunity. (D.I. 111 at 14–15). Plaintiff's new theories are that Officer Wharton (1) failed to include details about the Cellebrite System in her February 1, 2016 warrant application that, if included, would have altered the probable cause determination, (2) knowingly did an overbroad search after receiving the Cellebrite results from Detective Stafford, and (3) failed to execute the warrant in Plaintiff's presence, inventory the data seized, and submit the inventory to the issuing magistrate. (*Id.*).

The first theory essentially argues that the February 1, 2016 warrant was invalid because it was based on false statements contained in the affidavit of probable cause. To establish a § 1983 claim on that basis, a plaintiff must prove that (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant, and (2) such statements or omissions are material, or necessary, to the finding of probable cause. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing

*Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).  The proposed TAC alleges that Officer

Wharton failed to disclose specific facts relating to the use and significance of the Cellebrite

System.  (D.I. 111, Ex. A ¶ 53).  I do not think that is sufficient to plead a Fourth Amendment

violation.  Plaintiff does not allege facts supporting a reasonable inference that Officer Wharton

acted knowingly and deliberately, or with a reckless disregard for the truth, or that the omissions

about the Cellebrite System are material to the finding of probable cause.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).

The second theory also fails.  To be liable in a § 1983 action, a defendant must have been

personally involved in the wrongful conduct.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316

(3d Cir. 2014), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

Therefore, Plaintiff must plead that Officer Wharton, through her own individual actions, did an

overbroad search in violation of Plaintiff's Fourth Amendment rights.  *See Iqbal*, 556 U.S. at

676.  The only allegations against Officer Wharton are that she (1) obtained warrants to search

Plaintiff's phones for call history from October 13, 2015, (2) received a disc containing copies of

the Cellebrite extractions from the phones, and (3) "opened and read the contents of the disc."

(D.I. 111, Ex. A ¶¶ 37, 51, 63–64).  Those allegations, taken together, are insufficient to support

a plausible claim that Officer Wharton violated Plaintiff's Fourth Amendment rights.

The third theory does not assert an actionable claim.  There is no constitutional right to be

present while one's property is searched under a valid search warrant.  *United States v. Gervato*,

474 F.2d 40, 41 (3d Cir. 1973) (discussing search of a home).  Likewise, failure to list lawfully

seized items in the return of a warrant is not a constitutional violation.  *Cady v. Dombrowski*, 413

U.S. 433, 449 (1973); *United States v. Hall*, 505 F.2d 961, 962 (3d Cir. 1974).

Therefore, Plaintiff's claims against Officer Wharton are futile. To the extent that Plaintiff seeks to add those claims, the motion to amend is **DENIED**.

Regarding Detective Stafford, Defendants argue that Count III, "as worded," fails to state a claim upon which relief can be granted. It is not clear what Defendants mean by "as worded." I already found that Plaintiff properly pled a § 1983 claim against Detective Stafford based on his allegedly overbroad Cellebrite extraction of Plaintiff's cell phones. (D.I. 25 at 7). Therefore, Plaintiff's Count III claims against Officer Stafford are not futile.

### 4. Undue Delay, Bad Faith, and Dilatory Motive

Although Plaintiff has had multiple opportunities to amend, those amendments were made while Plaintiff was *pro se*. I previously found that Plaintiff showed diligence while *pro se*, and counsel has been diligent since entry into the case. (D.I. 98 at 1). Therefore, I find no undue delay in bringing the present motion.

I also find Plaintiff is not acting in bad faith or with dilatory motive. In fact, given that the proposed TAC will be Plaintiff's first complaint with the benefit of counsel, I believe it is strongly in the interest of justice to allow Plaintiff leave to amend. *See Thompson v. Vista View Apartments, LP*, 2008 WL 11379943, at *2 (S.D.W. Va. Mar. 18, 2008) (granting leave to amend where plaintiff's prior complaints were filed *pro se* and the proposed amended complaint was a "more thorough complaint" filed with counsel—"the court cannot conceive of a more appropriate circumstance where justice requires the allowance of an amended complaint").

Therefore, I find Rule 15(a)(2) supports amendment, excluding the claims that would be futile, as discussed above.

### B. Rule 16(b)

Federal Rule of Civil Procedure 16(b) applies when a party moves to amend past the date set by the scheduling order. *E. Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *Media Pharm. Inc. v. Teva Pharm. USA, Inc.*, 2016 WL 6693113, at *1 & n.2 (D. Del. Nov. 14, 2016). Rule 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause is present when the schedule cannot be met despite the moving party's diligence." *Media Pharm.*, 2016 WL 6693113, at *1. "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010).

It is not clear that Rule 16(b)(4) even applies here because all deadlines have been vacated pending the setting of a new scheduling order. (D.I. 98 at 1). However, assuming it does apply, I find Plaintiff meets good cause. As discussed, Plaintiff showed sufficient diligence both while *pro se* and after obtaining counsel. (D.I. 98 at 1).

Therefore, I find Rule 16(b)(4) supports amendment.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion (D.I. 110) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff should file a revised TAC consistent with this order.

In light of the forthcoming TAC, I want to address Detective Stafford's pending motion for summary judgment. (D.I. 93). I vacated the deadline for Plaintiff's opposition on July 25, 2018. (D.I. 96, 98). Briefing remains incomplete. I also indicated, at the November 19, 2018 status conference, that the motion might benefit from further fact discovery. Plaintiff had recently obtained counsel and was about to file the present motion to amend. (11/19/18 Status

Conf. at 16:24–18:8). Now, given the changes in the TAC, I think the best way forward is to allow the parties to refile dispositive motions at some later time. Detective Stafford's pending motion for summary judgment (D.I. 93) is **DISMISSED AS MOOT**. A new schedule will be set at a scheduling conference after the pleadings are finalized.

IT IS SO ORDERED this $\underline{25}$ day of March 2019.

United States District Judge